UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Scott Clare, et al.,

       Plaintiffs,

v.

Chrysler Group, LLC,

       Defendant.

_____/

Case No. 13-11225

Honorable Nancy G. Edmunds

## OPINION AND ORDER ACCEPTING AND ADOPTING THE SPECIAL MASTER'S REPORT AND RECOMMENDATION AND OVERRULING PLAINTIFFS' AND DEFENDANT'S OBJECTIONS [34, 35]; OPINION AND ORDER GRANTING PLAINTIFFS' MOTION TO AMEND INFRINGEMENT CONTENTIONS [33]; OPINION AND ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL DISCOVERY [40]

This is a patent case. Plaintiffs Scott Clare, Neil Long, and Innovative Truck Storage, Inc. hold and license U.S. Patent No. 6,499,795 (the "'795 patent") and U.S. Patent No. 7,104,583 (the "'583 patent"). Roughly, the patents secure the rights to an invention that entails putting a storage box in a pickup truck's sides to deter theft. Plaintiffs have filed suit alleging that Defendant Chrysler, LLC, has infringed the patents with its Dodge Ram pickup's RamBox–also a storage box in the pickup's sides.

This case originated in the Eastern District of Texas. On March 20, 2013, that court transferred the case to this district. (Dkt. 1.) As part of its transfer order, that court vacated the magistrate judge's provisional claim construction order. (Dkt. 2.) Upon the case's arrival, the Court met with parties and told the parties that it would not restart the case, meaning the parties were to not go through the entire *Markman* briefing again. The Court also told the parties that it would refer claim construction to a special master. The Court

did so, referring claim construction to Special Master John Thomas.  (Dkt. 11.)  The Special Master conducted the *Markman* hearing and has issued his report and recommendation on three contested patent phrases.  (Dkt. 31.)

The parties' objections to the Special Master's claim construction report and recommendation are now before the Court.  (Dkt. 34, 35.)  Plaintiffs have two other motions before the Court: their motion to amend infringement contentions and their motion to compel discovery relating to damages.  (Dkt. 33, 40.)

Because the Court finds that the Special Master has appropriately constructed the claims and because the parties have not persuaded the Court that it should alter the Special Master's recommendation, the Court accepts and adopts the report and recommendation in full.  Because the Court finds that Plaintiffs should have the opportunity to amend their infringement contentions, the Court GRANTS Plaintiffs' motion, but with conditions, as the Court discusses below.  And because the Court finds that Plaintiffs' discovery requests relating to Dodge Ram trucks without RamBoxes may be relevant, the Court GRANTS Plaintiffs' motion to compel.

## I.   General facts

On October 22, 1996, the United States Patent and Trademark Office ("USPTO") issued Plaintiff Scott Clare U.S. Patent No. 5,567,000, entitled "Hidden Storage/Utility System."  (Compl. ¶ 7.)  Six years later, Plaintiff Clare obtained one of the patents at issue in this case, the '795 patent, titled "Vehicle with Storage/Utility System."  (*Id.* ¶ 8.)  On September 12, 2006, Plaintiff Clare obtained the '583 patent, titled again "Vehicle with Storage/Utility System."  (*Id.* ¶ 9.)

Plaintiffs state that the patents are assigned to Plaintiff Clare and Plaintiff Neil Long and that Plaintiff Innovative Truck Storage, Inc. is the exclusive licensee of both patents. (Compl. ¶¶ 11, 12.)

Plaintiffs allege that Defendant had actual notice of all three patents. (Compl. ¶ 10.) They have set forth facts in their complaint supporting their allegation. Plaintiffs have filed suit claiming that Defendant's Dodge Ram's RamBox Cargo Maintenance System infringes the '795 and '583 patents. (*Id.* ¶¶ 19-22.)

Plaintiffs maintain that the RamBox is a "side panel storage system" that meets "each and every element of" the claims in the patents.

## II.   Asserted claims[1]

Plaintiffs allege that Defendant has infringed the following claims:

- Patent '795: claims 15, 19-21, 34, 36, and 37

- Patent '583: claims 33-35, 37, 41, 43-44, 46-48, 53, 56, and 57.

The Court lists the claims at issue below, for the sake of thoroughness.

### A.   '795 patent

- 14. A pickup truck having: a cab with two or more doors, each having an external surface; a bed with two contoured side panels connected to the cab; at least two rear wheels configured to support the bed, and two wheel wells connected to the bed above the rear wheels, the improvement comprising: at least one storage box adjacent a side panel, wherein the storage box does not substantially extend

---

[1]The Court recognizes that Plaintiffs have filed a motion to amend their infringement contentions. The Court includes those requested contentions here, claims 45 and 46 of the '795 patent, and the claims those claims are dependent upon.

3

laterally beyond the exterior surfaces of the doors; and at least one hinged panel providing access to the storage box.

- 15.  The improvement of claim 14, wherein the exterior surface of the side panel is substantially aligned with an exterior surface of the cab.

- 19.  The improvement of claim 14, wherein at least a portion of the storage box is located above the wheel well, at least a portion is located in front of the wheel well, and at least a portion is located behind the wheel well.

- 20.   The improvement of claim 14, wherein the storage box is substantially centered relative to the width of one of the rear wheels.

- 21.  The improvement of claim 14, wherein the hinged portion is constructed such that the pickup truck has an external appearance of a conventional pickup truck free of storage box.

- 33.  A vehicle comprising: a passenger cab; a cargo area defined by a pair of side panels and located behind the cabin; at least two rear wheels configured to support the cargo area; and a storage box mounted within the cargo area and adjacent to the side panels where the horizontal width of the cargo area is not substantially greater than the width of the passenger cabin.

- 34.  The vehicle of claim 33, wherein the vehicle is a pickup truck and the cabin is a cab.

- 36. The vehicle of claim 33, wherein the storage box is substantially centered relative to the width of one of the rear wheels.

- 37.  The vehicle of claim 33, wherein the side panels are contoured.

4

- 39.  A pickup truck having: a cab; a bed with two side panels connected to the cab and mounted on a frame; at least two rear wheels configured to support the bed; and two wheel wells connected to the bed above the rear wheels, the improvement comprising: a storage compartment mounted within the bed and adjacent to one of the wheel wells; and at least a portion of one of the side panels is hinged to provide access to at least a portion of the storage compartment wherein the side panels terminate adjacent the frame.

- 44.  The truck of claim 39 which further comprises a second storage compartment mounted within the bed and adjacent to a second wheel well.

- 45.  The truck of claim 44 wherein the first and second storage compartments are formed by contoured side panels connected to the cab wherein at least a portion of said side panels are hinged to provide access to at least a portion of said storage compartments.

- 46.  The truck of claim 45 wherein the hinged portion is constructed such that the truck has an external appearance of a conventional pickup truck.

**B.  '583 patent, September 12, 2006**

- 22.  A pickup truck comprising a forward area with contoured sides and a bed; the bed comprising: an open cargo area; rear wheel wells, two opposed side panels which are contoured and generally in line with the contoured sides of the forward area of the pickup truck, a floor; a first and second inner wall, which are visually integrated into the bed to define the lateral sides of the open cargo area of the bed, the inner walls being spaced laterally inwardly of their associated side panels; storage compartments built into the bed between the inner walls and their

5

associated side panels, the storage compartments located at least partially above the floor; and hinged panels providing access to the storage compartments; the bed being constructed such that the pickup has substantially the external appearance of a pickup without the built-in storage.

- 23.  The pickup truck of claim 22, wherein the hinged panels comprise hinges that are not exposed to an external view of the pickup truck.

- 24.  The pickup truck of claim 22, wherein the bed is constructed such that the pickup truck has substantially the appearance of a pickup truck without the built in storage.

- 25.  The pickup truck of claim 22, 23, or 24 wherein the contour of the side panels proximate the forward area substantially conforms to the contour of the forward area up to substantially the height of the bed.

- 33.  The pickup truck of claim 25, wherein the first and second inner walls are spaced apart by a distance of at least four feet.

- 34.   The pickup truck of claim 25, wherein the wheel wells have inner edge portions, and the inner walls are approximately aligned with the inner edge portions of the wheel wells.

- 35.  The pickup truck of claim 25, wherein the wheel wells have inner edges and inner walls are each positioned near an inner edge of the wheel wells.

- 36.  The pickup truck of claim 25, further comprising top rails between the inner walls and the side panels.

- 37.  The pickup truck of claim 36, in which the hinged panels include at least a portion of the top rails.

6

- 41. The pickup truck of claim 25, wherein the width of the storage compartments at the top of the side panels is less than the width of the wheel wells at the level of the floor.

- 43. The pickup truck of claim 25, wherein at least one of the storage compartments contains a storage bin.

- 44. The pickup truck of claim 25, wherein at least one of the storage compartments is lockable.

- 45. A pickup truck comprising a forward area with contoured sides and a bed; the bed comprising: an open cargo area; rear wheel wells, two opposed side panels which are contoured and generally in line with the contoured sides of the forward area of the pickup truck, top rails; a floor; first and second inner walls, which are visually integrated into the bed to define the lateral sides of the open cargo area of the bed, the inner walls being spaced laterally inwardly of their associated side panels; storage compartments built into the bed between the inner walls and their associated side panels, the storage compartments being located at least partially above the floor, at least partially above the wheel wells and at least partially behind the wheel wells; and hinged panels providing access to the storage compartments; the bed being constructed such that the pickup has substantially the appearance of a pickup without the built-in storage.

- 46. The pickup truck of claim 45, wherein the hinged panels comprise hinges that are not exposed to an external view of the pickup.

- 47. The pickup truck of claim 45, wherein the storage compartments are at least partially in front of the wheel wells.

7

- 48. The pickup truck of claim 45, wherein the hinged panels comprise hinges located along a portion of the top rails.

- 49. The pickup truck of claim 45, 46, 47, or 48, wherein the storage compartments are entirely above the floor of the bed.

- 53. The pickup truck of claim 49, wherein the side panels are contoured to substantially match the contoured sides of the forward area.

- 56. The pickup truck of claim 49, wherein at least one of the storage compartments contains a storage bin.

- 57. The pickup truck of claim 49, wherein at least one of the storage compartments is lockable.

## III. The Special Master's report and recommendation

The parties asked the Special Master to construct three terms/phrases in the claims. The parties asked the Special Master to construct "hinged panel" in the '795 and '583 patents, "substantially the external appearance" in the '583 patent, and "the external appearance of a conventional pickup truck" in the '795 patent.

The Special Master recommended not giving a different construction for "hinged panel." (Dkt. 31, Special Master Report at 7.)  The Special Master found that "[h]inges and panels are common pieces of hardware that are encountered on an everyday basis." (*Id.*) He explained that "[l]ay persons require no special definition to understand the meaning of these terms." (*Id.*)

As for "substantially the external appearance" in the '583 patent and "the external appearance of a conventional pickup truck" in the '795 patent, the Special Master recommended defining the two terms in the same way: "[t]he hinged portion is constructed

8

such that the storage box is not obvious from the outward appearance of the pickup."

(Special Master Report at 14.)

## IV.  Claim construction's purpose and guiding tenets

Claim construction's "ultimate goal" is to determine the meaning and scope of the

patent claim that a defendant is allegedly infringing.  *Advanced Fiber Tech. (AFT) Trust v.*

*J&L Fiber Servs., Inc.*, 674 F.3d 1365, 1374 (Fed. Cir. 2012) (citation omitted).

In claim construction, courts generally give words "their ordinary and customary

meaning as understood by a person of ordinary skill in the art when read in the context of

the specification and prosecution history."  *Thorner v. Sony*, 669 F.3d 1362, 1365 (Fed. Cir.

2012) (citation omitted).  Two exceptions to that practice exist: "1) when a patentee sets

out a definition and acts as his own lexicographer, or 2) when the patentee disavows the

full scope of a claim term either in the specification or during prosecution."  *Id.* (citation

omitted).

Under the "lexicographer" exception, a patentee must "clearly set forth a definition of

the disputed claim term" "other than its plan and ordinary meaning."  *Thorner*, 669 F.3d at

1365 (citation omitted).  A patentee cannot "simply disclose a single embodiment or use

a word in the same manner in all embodiments, the patentee must 'clearly express an

intent' to redefine the term."  *Id.* (citation omitted).  "[T]he investor's written description of

the invention . . . is relevant and controlling insofar as it provides clear lexicography[.]"  *Id.*

(citation omitted, first insertion in *Thorner*, emphasis removed.).

Under the "disavowal" exception, "[w]here the specification makes clear that the

invention does not include a particular feature, that feature is deemed to be outside the

reach of the claims of the patent, even thought the language of the claims, read without

reference to the specification, might be considered broad enough to encompass the feature in question." *Thorner*, 669 F.3d at 1366 (citation omitted). "The patentee may demonstrate intent to deviate from the ordinary and accustomed meaning of the claim term by including in the specification expressions of a manifest exclusion or restriction, representing a clear disavowal of claim scope." *Id.* (citation omitted). But, the "[m]ere criticism of a particular embodiment encompassed in the plain meaning of a claim term is not sufficient to rise to the level of clear disavowal. *Id.* (citation omitted).

The standard to show disavowal is high. The Federal Circuit has stated "that even where a particular structure makes it 'particularly difficult' to obtain certain benefits of the claimed invention, this [difficulty] does not rise to the level of disavowal of the structure." *Thorner*, 669 F.3d at 1366. The Federal Circuit has continued,

> [i]t is likewise not enough that the only embodiments, or all of the embodiments, contain a particular limitation. [Courts] do not read limitations from specification into claims; [courts] do not redefine words. Only the patentee can do that. To constitute disclaimer, there must be a clear and unmistakable disclaimer.
>
> It is the claims that define the metes and bounds of the patentee's invention. The patentee is free to choose a broad term and expect to obtain the full scope of its plain and ordinary meaning unless the patentee explicitly redefines the term or disavows its full scope.

*Id.* (citations omitted).

## V.   The Court accepts and adopts the Special Master's "hinged panel" construction

Again, the Special Master, after a lengthy discussion that directly addressed the parties' arguments, recommended that the Court not offer a different "hinged panel" construction.

Plaintiffs do not object to the Special Master's "hinged panel" construction. (Dkt. 34, Pls.' Obj.)

Defendant, though, objects to the Special Master's "hinged panel" claim construction. (Dkt. 35, Def.'s Obj.) Defendant asks the Court to adopt Judge Payne's construction of hinged panel that he construed when the case was still in Texas. (Def.'s Obj. at 1.) Judge Payne interpreted "hinged panel" as "a panel formed primarily from the side of the panel that is hinged." (*Id.*) Defendant argues that Judge Payne's construction correctly took into account the intrinsic record. (*Id.*)

Defendant suggests that "[t]hroughout the proceedings, Plaintiffs have failed to identify even a single sentence in the patent specification showing a hinged opening formed somewhere other than the side panel." (Def.'s Obj. at 1.)

Defendant posits that the Special Master erred in two ways. Defendant first argues that the Special Master did not consider the intrinsic evidence in the aggregate. (Def.'s Obj. at 2.) If he had, Defendant maintains, he would have construed the "hinged panel" term as Judge Payne did. (*Id.*) Defendant then argues that the Special Master misread a prosecution history passage. (*Id.*) If he had read the passage correctly, Defendant argues, he would have found that the misread language actually limited the claim, instead of broadening it. (*Id.*)

Defendant argues that *Retractable Technologies, Inc. v. Becton, Dickinson and Co.*, 653 F.3d 1296 (Fed. Cir. 2011) is directly on point. (Def.'s Obj. at 3.) Defendant maintains that *Retractable* stands for the proposition that a patent's specification, prosecution history, and other intrinsic evidence can narrow a broad claim term.

11

In *Retractable*, the Federal Circuit addressed the claim construction of the term "body" in a retractable syringe patent.  653 F.3d at 1304.  The patents in question contained an independent claim that contained a "body," and a dependent claim that limited the "body" to a "one-piece body."  *Id.* at 1305.  The court stated that "none of the claims expressly recite a body that contains multiple pieces."  *Id.*  The court reasoned that, "while the claims can be read to imply that a 'body' is not limited to a one-piece structure, that implication is not a strong one."  *Id.*

The *Retractable* court ultimately held that the proper construction of "body" was that it referred solely to a one-piece body.  653 F.3d at 1305.  The court held so by looking at the specifications, which "expressly state[d] that each syringe embodiment contain[ed] a one-piece body," and by looking at the figure drawings, which each depicted a syringe with a one-piece body.  *Id.*  The court stated that the specifications did not disclose a body that consisted of multiple pieces or indicated that the body was anything other than a one-piece body.  *Id.*

In deciding, the court stated that "the claim construction process entails more than viewing the claim language in isolation."  *Retracable*, 653 F.3d at 1305.  The court pointed out that "[c]laim language must always be read in view of the written description . . . and any presumption created by the doctrine of claim differentiation 'will be overcome by a contrary construction dictated by the written description or prosecution history[.]" *Id.*  Given that a "contrary construction" from the written description or prosecution history can overcome the claim language, the court held that "it is necessary to review the specifications to determine if the proper construction of the term 'body' is limited to a one-piece body."  *Id.* (citations omitted).

12

The Federal Circuit noted that "[t]here is a fine line between construing claims in light of the specification and improperly importing a limitation from the specification into the claims." *Retractable*, 653 F.3d 1305 (citation omitted). "In reviewing the intrinsic record to construe the claims, we strive to capture the scope of the actual invention, rather than strictly limit the scope of claims to disclosed embodiments or allow the claim language to become divorced from what the specification conveys is the invention." *Id.* (citation omitted).

Applying claim construction goals to its case, the *Retractable* court held that, while the claim "[left] open the possibility that the recited 'body' may encompass a syringe body composed of more than one piece, the specifications tell [] otherwise." 653 F.3d at 1305. The court pointed out that the specifications "expressly" recited that "the invention" had "a body constructed as a single structure" which expressly distinguished it from prior art. *Id.* The court held that "a construction of 'body' that limits the term to a one-piece body [wa]s required to tether the claims to what the specifications indicate the inventor actually invented." *Id.*

Defendant argues that the Court should look to *Retractable* for guidance in how to construe the claims. Defendant states that "the specification embodiments here include a specific feature that is more limited than what the claims would appear to encompass if viewed without reference to the specification." (Def.'s Obj. at 4.) Defendant explains that all of the specification embodiments of the '795 and '583 patents include a "hinged panel" formed exclusively or primarily from the side panel. (*Id.* at 4-5.) Defendant stresses that "every time" "the specification describes access to the storage, it is through a hinged side

13

panel[.]" (*Id.* at 5.)  Defendant adds that "every method" "described for making the claimed invention involves adapting a side panel to create the hinged panel[.]" (*Id.* at 6.)

Defendant also stresses that *Retractable* is persuasive because that court found that that patentee distinguished its invention from prior art and, here, Defendant argues that Plaintiff also has distinguished his invention from prior art.  (Def.'s Obj. at 9.)  Defendant maintains that the patentee in this case, for the '583 patent, "twice distinguished" its patent from prior art because the '583 patent contemplated a "hinged opening in the side panel." (*Id.*)  Defendant represents that the Special Master mischaracterized the argument by stating that the patentee was providing a general description of the prior art, and did not distinguish the claimed invention.  (*Id.* at 9-10.)  Defendant claims that the patentee's distinguishing comments appeared under the heading "No Claims are Obvious Over [the Prior Art]" and that the comments's express purpose were to distinguish the claims as not obvious.  (*Id.* at 10.)   Defendant then claims that the patentee argued that its present claims, in which Defendant states included "hinged panel," differed from the prior art because the prior art did not include a hinged opened in the "side panel" or "portion of the side panel.  (*Id.*)

Defendant lastly argues that *Retractable* is analogous because, both there and here, the patentee described the invention in a way that limits the invention.  (Def.'s Obj. at 12.) Here, Defendant points out that the patentee described its invention to include a hinged side panel. (*Id.*)  Defendant points to the abstract as well as the specification, both which include hinged side panels, to suggest that the patent must include a hinged side panel. (*Id.* at 12-13.)

14

Plaintiffs disagree with Defendant's proposed claim construction. (Dkt. 38, Pls.' Resp. to Def.'s Obj.)  Plaintiffs argue that Defendant has failed to show how "hinged panel" should not be entitled to a broad scope and that Defendant has failed to show any "clear and unmistakable disclaimer" of that broad scope.  (*Id.* at 1-2.)  Plaintiffs maintain that the specifications do not include any "clear expressions of manifest exclusion or restriction" and do not reflect an intent to limit the claims to a preferred embodiment.  (*Id.* at 2-3.)  Plaintiffs also state that the summary of the inventions states "repeatedly," "[i]n certain embodiments of the present disclosure[.]" (*Id.*)  Plaintiffs also suggest that the drawings and the detailed descriptions all mention "embodiments" and do not limit the hinged panel to being on the side panel.  (*Id.*)  Plaintiffs urge the Court to adopt the Special Master's finding that "no passage within either patent states that the invention is limited to a hinged panel located on the side panel."  (*Id.*)

Plaintiffs next argue that the specification supports various hinged panel configurations.[2]  (Pls.' Resp. to Def.'s Obj. at 5.)  For support, Plaintiffs point to the preferred embodiment of the invention, Figure 1.  (*Id.* at 6.)  Plaintiffs suggest that Figure

---

[2]The Court quickly disposes of some of Defendant's arguments.  Plaintiffs address Defendant's history excerpts.  (Pls.' Resp. to Def.'s Obj. at 3.)  Plaintiffs maintain that the Special Master correctly read the prosecution history excerpts as attempts to distinguish prior references rather than limiting Plaintiffs' invention. (*Id.*)  Plaintiffs offer that the Special Master reviewed the entire intrinsic record and concluded properly that Plaintiffs did not disclaim any claim scope regarding "hinged panel."  (*Id.* at 4.)  The Court has reviewed the agrees with Plaintiffs and the Special Master.  Plaintiffs also argue that the testimony of the prosecuting attorneys is irrelevant.  The Court again agrees.  *See Bell & Howell Document Mgmt. Prods. Co. v. Altek Systems*, 132 F.3d 701, 706 (Fed. Cir. 1997) (citations omitted) ("The testimony of an inventor and his attorney concerning claim construction is thus entitled to little or no consideration.  The testimony of an inventor often is a self-serving, after-the-fact attempt to state what should have been part of his or her patent application; the testimony of an attorney 'amounts to no more than legal opinion–it is precisely the process of construction that the court must undertake.'")

1 shows a hinged panel that includes the entire top rail, and not simply the side panel. (*Id.*) Plaintiffs point to claims 39 and 49 of the '795 patent and claim 37 of the '583 patent to show that claims include a variety of hinged panel configurations. (*Id.* at 8.)

Plaintiffs also argue that Defendant, in making its arguments, has not been faithful to the specification. (Pls.' Resp. to Def.'s Obj. at 8-9.) Plaintiffs suggest that Defendant has improperly argued from the abstract, background, and summary sections instead of the "Detailed Description" section and "conveniently omit the words 'in certain embodiments' or other language making clear the description relates to one preferred embodiment without the intention of disclaiming others." (*Id.*)

The Court agrees with the Special Master and Plaintiffs, neither the claims nor the detailed description are so clear as to constitution disavowal of the full reading of "hinged panel." Here, as Plaintiffs point out, the claims themselves contemplate differing configurations of the hinged panel that opens to the storage box. Claims 39 and 49 of the '795 patent contemplate various sized portions of the side panel, from "at least a portion of the side panel" to "a substantial portion[.]" Claim 37 of the '583 patent contemplates a hinged panel that includes portions of the top rail.

The detailed description of both patents strengthen a broader reading than Defendant suggests as well. The detailed description recognizes the need for different embodiments of the inventions. The detailed description states that "[w]hile a specific embodiment of the storage/utility system of the present invention has been described and illustrated, such is not intended to limit the invention to this embodiment." The detailed description also recognizes the need for various types of hinged panels given that "[b]eds for pickups, trailers, and trucks are designed with differently constructed side panels and

16

frame/undercarriage arrangements." And the detailed description expressly conceives of a hinged panel that "eliminates the need for raising the entire side panel" by making cuts in an extended panel's lower portion.

As the Special Master discussed, the claims contain varying distinctions between the appropriate amount of side panel to be hinged. (Special Master Report at 5.) The Court agrees that "[i]gnoring these distinctions among the claims through the exercise of claim construction would effectively amount to rewriting the claims and importing limitations from the specifications into some of the claims[.]" (*Id.*)

This case is not similar to *Retractable*, as Defendant argues. In *Retractable*, the court noted that the specifications did not reveal anything other than a one-pieced-bodied syringe. The court further noted that neither the specifications, the figures, nor the prosecution history disclosed anything other than a one-pieced-bodied syringe. There, the entire intrinsic record was consistent. Here, the Court notes that the claims and specification are consistent, but that some inconsistencies appear to exist in the prosecution history. But, even if these minor inconsistencies existed, in the face of the claims and the specifications, they do not constitute a clear disavowal of the scope of how "hinged panel" should be interpreted. *See Old Town Canoe Co. v. Confluence Holdings Corp.*, 448 F.3d 1309, 1318 (Fed. Cir. 2006) (stating, a patentee "is not entitled to a claim construction divorced from the context of the written description and prosecution history.").

Because the patent claims and detailed description use "hinged panel" consistently in a broad manner, the Court rejects Defendant's objections and adopts the Special Master's construction. While Defendant argues that the Court 'must' construe "hinged panel," and that not giving an explanatory phrase is not construing the term, the Court

17

disagrees.  *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) ("When the parties raise an actual dispute regarding the proper scope of [] claims, the court, not the jury, must resolve that dispute.") (And holding that the district court erred when it concluded that "only if" was a common phrase that needed no construction even though the parties disputed the phrase.)  "Words of a claim are generally given their ordinary and customary meaning, which is the meaning a term would have to a person of ordinary skill in the art after reviewing the intrinsic record at the time of the invention."  *O2 Micro*, 521 F.3d at 1360.  Here, the Court finds that "hinged panel" is a common phrase and that it is entitled to the full scope of its common meaning.

## VI.   The Court accepts and adopts the Special Master's construction of the external appearance terms

The Special Master recommended constructing the '583 patent's "substantially the external appearance" and the '795 patent's "the external appearance of a conventional pickup truck"   as "the hinged portion is constructed such that the storage box is not obvious from the outward appearance of the pickup."  (Special Master Report at 14.)

Plaintiffs object to the Special Master's recommendation related to the various "external appearance" terms.  (Pls.' Obj. at 1.)  Plaintiffs argue that the Special Master's construction "(a) deleted the expressly recited frame of reference, (b) is contrary to the express definition memorialized in the intrinsic record, and (c) will confuse the jury."  (*Id.*)

Plaintiffs suggest that the "external appearance" terms require no construction.  (Pls.' Obj. at 2.)  They argue that the terms are "common, everyday, non-technical words" and that they require no construction.  (*Id.*)  Plaintiffs suggest that the Court "exercise restraint" and leave the claims alone or replace certain words without "overhauling the claims."  (*Id.*)

18

Plaintiffs first object to the Special Master's deletion of frames of reference terms that appear both in the '795 and '583 patents.[3]  (Pls.' Obj. at 3-4.)  Plaintiffs state that the Special Master has deleted the frames of reference, and in doing so has "transform[ed] the way in which the claim is to be read, understood, and applied to the accused product." (*Id.* at 4.)  Plaintiffs maintain that the jury is to "evaluate infringement by comparing the accused pickup truck *with* built-in storage to a conventional pickup truck *without* built-in storage." (*Id.* at 4-5.)

Plaintiffs also argue that the Special Master rewrites the claims by substituting "not obvious" for all the claims that include an "external appearance" phrase in it.  (Pls.' Obj. at 5.)

Plaintiffs suggest that, instead of rewriting the claims, the Court should instead replace the construed terms with language that it determines will offer the most clarity, such as "has outward aspect of, "looks like," or "looks similar to."  (Pls.' Obj. at 6.)  Plaintiffs say that, if the Court does so, the Court will preserve the claims's integrity.  (*Id.*)

Plaintiffs, looking to the patents's prosecution histories, argue that the Court should swap "the pickup truck has the external appearance of" with "the outward aspects of the inventive pickup truck are like the outward aspects of a conventional pickup truck."  (Pls.' Obj. at 9.)  Plaintiffs alternatively suggest that the Court could replace the "external" language with "looks like" or "looks similar to."  (*Id.*)

---

[3]The '795 patent contains the phrase "the hinged portion is constructed such that the pickup truck has an external appearance of a **conventional pickup truck free of a storage box**."  The '583 patent contains the phrases akin to "the bed being constructed such that the pickup has substantially the external appearance **of a pickup without the built-in storage**."

Plaintiffs next object to the Special Master's alleged rejection of the intrinsic record. (Pls.' Obj. at 10.)  Plaintiffs argue that the Special Master rejected without discussion the representations that Plaintiffs made during the patent prosecution.  (*Id.*)  Plaintiffs object to the Special Master's characterization that these representations conflict with the patent specification.  (*Id.*)

Plaintiffs last object to the Special Master's report because, they argue, the proposed construction will confuse the jury.  (Pls.' Obj. at 12-13.)

Plaintiffs explain that, in patent law, "obviousness" and "non-obviousness" are terms of art under 35 U.S.C. § 103, and that, here, Defendant has to prove "obviousness" by clear and convincing evidence whereas Plaintiff have to prove infringement by a preponderance of the evidence.[4]  (Pls.' Obj. at 12-13.)

Given the "obvious" language in the burdens of proof as well as the Special Master's report, Plaintiffs suggest that the jury could possibly be confused.

Defendant opposes Plaintiffs' objections to the Special Master's recommended construction of the external appearance terms. (Dkt. 37, Def.'s Resp. to Pls.' Obj.) Defendant first points to the abstract, which emphasizes that one of the invention's purposes was to create a storage system that reduced the attraction for theft by providing storage that would not "substantially alter the truck's external appearance."  (*Id.* at 4.) Defendant stresses that the abstract alone does not support its argument, but the

---

[4]35 U.S.C. § 103 provides, "[a] patent for a claimed invention may not be obtained, notwithstanding that the claimed invention is not identically disclosed as set forth in section 102, if the differences between the claimed invention as a whole would have been obvious before the effective date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains.  Patentability shall not be negated by the manner in which the invention was made."

specification also explains that Plaintiffs' invention differed from prior storage boxes in that it provided for a storage/utility system that did not alter the bed's external appearance and therefore reduced theft. (*Id.*)  Defendant notes that the specification emphasizes repeatedly the invention's "hidden storage" attributes. (*Id.* at 4-5.)

Defendant also points to the patents' prosecution history. (Def.'s Resp. to Pls.' Obj. at 6.)  Defendant represents that prior storage systems were noticeable and did not address the theft issues. (*Id.*)

The Court again agrees with the Special Master and accepts and adopts his report and recommendation over Plaintiffs' objections. The Court finds that the Special Master's proposed construction, "[t]he hinged portion is constructed such that the storage box is not obvious from the outward appearance of the pickup," captures the patent's substance and purpose. The Court again needs only look at the claims and the specification to determine that the invention's purpose and a great part of its essence is devoted to deterring theft by cloaking the storage box in the appearance of a truck without a storage box–a storage box that is "not obvious." The Special Master's proposed construction will assist the jury and provide clarity, the Court adopts it.

The detailed descriptions both contain the following:

> It has thus been shown that the present invention provides a hidden storage/utility arrangement that can be initially built into a pickup truck bed, or a conventional bed can be converted to include the storage/utility arrangement without altering the external appearance of the bed and without a significant reduction in the carrying capacity of the bed. While the invention has been described with respect to a pickup bed, it can be readily incorporated into trailer or full-sized truck beds having side panels without detracting from the appearance of the side panels, except for the two vertical cuts therein.

21

The claims also convey that the invention's purpose is to hide the storage box from casual notice to deter theft.  The "not obvious" language captures that purpose.

As to Plaintiffs' argument that the Special Master has proposed a construction that removes frames of reference, the Court rejects that argument.  The invention's purpose is to render the storage box "not obvious," so as to deter theft.  An outcome of the purpose is that a truck with a storage box looks like it does not have a storage box.  A jury does not have to have a frame-of-reference truck to tell whether a truck with a storage box looks as if it does not have a storage box.  Given the detailed description, the Court overrules Plaintiffs' objections and fully adopts the Special Master's recommendation.

As to the arguments about the term "obvious," the Court finds, if this case goes to trial, that it can properly instruct the jury about the different terms and burdens of proof so as not to confuse the jury.  The Court therefore rejects Plaintiffs "obvious" arguments.

## VII. The Court grants Plaintiffs' motion for leave to amend their infringement contentions

Plaintiffs have filed a motion for leave to amend infringement contentions in order to substitute two claims.  (Dkt. 33, Pls.'s Mot. to Am.)  Defendant opposes the amendment.  The Court heard oral argument on this motion during the May 28, 2014 hearing.  After hearing the parties' arguments, the Court informed them that it would grant the motion.  The Court therefore grants Plaintiffs' motion, in the interests of justice; but, given that Plaintiffs did not abide by their original representation that they would hold themselves bound by the agreed-upon proposed scheduling order, the Court requires Plaintiffs to pay the costs of the additional discovery that Plaintiffs' amendment necessitates.  The Court discusses the costs issue and limitations on the additional discovery below.

Plaintiffs want to assert claims 45 and 46 of the '795 patent, which they stated both relate to independent claim 39.  (Pls.' Mot. to Am. at 2.)  Plaintiffs offer to remove two previously asserted claims so that the total claims asserted would remain at the agreed-upon twenty.  (*Id.* at 2-3.)  Plaintiff offers to remove claims 36 of the '795 patent and claim 35 of the '583 patent.  (*Id.* at 3.)

Plaintiff argues that they have timely moved for leave to amend.  (Pls.' Mot. to Am. at 3.)  They argue that claims 45 and 46 have been "in" the case since 2012 and only "out" of the case for eight business days.  (*Id.*)  Plaintiffs maintain that the amendment is important to their case because, they allege, Defendant is infringing the claims.  (*Id.*)  Plaintiffs state that they "have determined that [c]laims 45 and 46 could be important to the disposition of the case."  (*Id.*)  Plaintiffs also state that 45 and 46 are similar to asserted claims 14 and 21 of the '795 patent, but with subtle and possibly important differences.  (*Id.*)

Plaintiffs then argue that Defendant will not suffer prejudice by the amendment/substitution of the claims.  (Pls.' Mot. to Am. at 3-4.)  Plaintiffs explain that they previously disclosed their infringement theories for claims 45 and 46 in 2012.  (*Id.*)  Plaintiffs state that they "notified [Defendant] on numerous occasions that they might seek leave to add [c]laims 45 and 46."  (*Id.*)

**A.  Facts relevant to motion to amend infringement claims**

In early December, 2013, Defendant suggested limiting Plaintiffs' asserted claims to fifteen by January 20, 2014.  (Def.'s Resp. to Pls.' Mot. to Am., Ex. B)  On December 13, 2013, Plaintiffs' counsel responded to Defendant's email and stated that Plaintiffs proposed to limit their claims to thirty within fourteen days of the Special Master's claim construction

23

ruling, so long as Defendant would agree to limit its prior art references to fifteen at that time.  (*Id.*, Ex. C.)  Plaintiffs' counsel also represented that Plaintiffs would consider limiting their number of claims during the pretrial process and they expected not to go to trial on more than twelve claims.  (*Id.*)

On January 14, 2014, Plaintiffs' counsel emailed Defendant's counsel.  (Def.'s Resp. to Pls.' Mot. to Am., Ex. F.)  Plaintiffs' counsel wrote, "[a]ssuming we agree to limit the asserted claims by Jan. 24, when would [Defendant] limit its references?  Can you give me a non-binding estimate of that date so I can plug it in to a draft scheduling order[?]" (*Id.*)  Defendants' counsel responded a day later, with an agreement and clarification.  (*Id.*, Ex. G.)

By January 17, 2014, Plaintiffs' counsel had finished the stipulated proposed scheduling order and Defendant's counsel had given the approval to file.  (Def.'s Resp. to Pls.' Mot. to Am., Ex. J.)

On January 20, 2014, the parties corresponded.  (Pls.' Mot. to Am., Ex. B.)  Plaintiffs' counsel stated that Plaintiffs would file the proposed order and that they would narrow their claims to twenty by the date specified in the schedule.  (*Id.*)  Plaintiffs' counsel included a caveat; he stated that Plaintiffs would "reserve the right to seek leave of Court to replace some of those 20 claims with [c]laim 45 (very similar to [c]laim 14) and [c]laim 46 (very similar to [c]laim 21)." (*Id.*)  Plaintiffs' counsel asked Defendant's counsel to be mindful of those claims and their position that Defendant is infringing those claims.  (*Id.*)  Plaintiffs' counsel further explained that, given Plaintiffs' position in the email, Defendant would not be able to claim any prejudice or surprise if Plaintiffs request, and the Court permits, the amendment.  (*Id.*)

24

On January 20, 2014, Plaintiffs filed the agreed upon motion for entry of scheduling order.  (Dkt. 32.)

On January 23, 2014, Plaintiffs' counsel emailed Defendant's counsel.  (Def.'s Resp. to Pls.' Mot. to Am., Ex. K.)  In that email, Plaintiffs' counsel stated,

> [b]y now, you should have received our Supplemental Infringement Contentions, which are limited to 20 claims, as agreed. As you know, the Court has not yet adopted the schedule we jointly proposed.  Nevertheless, I assume we are in agreement that the parties will abide by, and be bound by, that schedule unless and until the Court orders otherwise.

(*Id.*)  While the exhibit includes a response from Defendant's counsel, the response does not address the "assumption."  (*Id.*)

Between January 17 and January 31, 2014, Defendant represents that it deposed all of Plaintiffs' witnesses, including the inventor, all three plaintiffs, their wives, and the patent agent.  (Def.'s Resp. to Pls.' Mot. to Am. at 5.)

On February 3, 2014, Plaintiffs' counsel emailed Defendant's counsel and informed Defendant that it would assert infringement claims 45 and 46 and drop two other claims. (Pls.' Mot. to Am., Ex. G.)  Plaintiffs' counsel explained Plaintiffs' position, that they had repeatedly informed Defendant that they might seek leave to add these claims and that Defendant cannot claim any prejudice relating to the addition.  (*Id.*)

That same day, Defendant's counsel responded to the email, stating that Defendant would oppose any motion to amend.  (Pls.' Mot. to Am., Ex. G.)

On February 7, 2104, the Court entered the parties' amended scheduling order.  (Dkt. 36.)  The order provided that Plaintiffs were to identify their asserted claims (no more than twenty) by January 23, 2014.  (*Id.*)

The Amended Scheduling Order provides, by January 23, 2014, that

25

Plaintiffs shall identify their asserted claims by identifying no more than 20 claims, which shall be limited to independent claims 14 and 33 of the '795 Patent, independent claims 22 and 45 of the '583 Patent, or to claims that depend from one of those four independent claims.  Deadline for Plaintiffs to serve Supplemental or Amended Infringement Contentions.

(Dkt. 36.) The Amended Scheduling Order has a footnote that states,

Plaintiffs have complied with this deadline by identifying 20 asserted claims and by serving Supplemental Infringement Contentions.  Plaintiffs will be filing a Motion for Leave to Amend those contentions, seeking to substitute two claims (Claims 45 and 46 of the '795 Patent) in place of two other claims that are currently being asserted.

(*Id.*)

Plaintiffs request to assert claims 45 and 46, which they allege are similar to claim 14.

[14] A pickup truck having: a cab with two or more doors, each having an external surface; a bed with two contoured side panels connected to the cab; at least two rear wheels configured to support the bed, and two wheel wells connected to the bed above the rear wheels, the improvement comprising: at least one storage box adjacent a side panel, wherein the storage box does not substantially extend laterally beyond the exterior surfaces of the doors; and at least one hinged panel providing access to the storage box[, 21] wherein the hinged portion is constructed such that the pickup truck has an external appearance of a conventional pickup truck free of storage box.

[39] A pickup truck having: a cab; a bed with two side panels connected to the cab and mounted on a frame; at least two rear wheels configured to support the bed; and two wheel wells connected to the bed above the rear wheels, the improvement comprising: a storage compartment mounted within the bed and adjacent to one of the wheel wells; and at least a portion of one of the side panels is hinged to provide access to at least a portion of the storage compartment wherein the side panels terminate adjacent the frame. [44] a second storage compartment mounted within the bed and adjacent to a second wheel well, [45] wherein the first and second storage compartments are formed by contoured side panels connected to the cab wherein at least a portion of said side panels are hinged to provide access to at least a portion of said storage compartments, and [46] wherein the hinged portion is constructed such that the truck has an external appearance of a conventional pickup truck.

26

Plaintiffs offer to remove two other claims so that the total infringement contentions remain at twenty.

### B.  The parties' arguments

Defendant objects to the proposed claims substitutions.  (Def.'s Resp. to Pls.' Mot. to Am. at 1.)   Defendant argues that Plaintiffs' request violates the stipulated order in "important ways."  (*Id.*)   Defendant argues that the motion to amend (1) adds a fifth, independent, asserted claim to the case (a claim that was not at issue when Defendant agreed to and selected its ten primary prior art reference), (2) alters the infringement contentions with the substitutions, and (3) moves the deadline for Plaintiffs' final infringement contentions to a date after Defendant "took all of the key depositions in the case based on the Stipulated Independent Claims."  (*Id.*)

Defendant suggests that the Court should deny Plaintiffs' request for any of three reasons.  (Def.'s Resp. to Pls.' Mot. to Am. at 2.)   Defendant first suggests that the stipulation is binding and that case law provides that Defendant cannot overcome the stipulation's binding nature.  (*Id.*)  Defendant then argues that Plaintiffs cannot prove that they have "good cause" to amend.  (*Id.*)  And Defendant finally argues that Plaintiffs cannot claim that the amendment would not prejudice Defendant, given the fact that Defendant has already identified its prior art references and conducted four consecutive days of depositions and relied upon Plaintiffs' asserted claims during those depositions.  (*Id.*)

Plaintiffs argue that Defendant has been on notice for "nearly two years about Plaintiffs' infringement theories claims 45 and 46."  (Pls.' Reply at 3.)  They also argue that Defendant cannot identify any prejudice.  (Pls.' Reply at 4-5.)  Plaintiffs suggest that Defendant's discovery and deposition prejudice argument does not hold up.  (*Id.* at 5.)

27

Plaintiffs maintain that they permitted Defendant to ask Plaintiffs "*any* questions about *any* claims." (*Id.*)   Plaintiffs say that Defendant cannot point to a single instance in which Defendant can show that Plaintiffs precluded it from asking about claims 45 or 46.  (*Id.*) Plaintiffs further say that "to the extent [Defendant] asked any questions about Claims 14 or 21, it necessarily would have asked questions directly related to Claims 45 and 46, because of the substantial overlap and similarities between those claims." (*Id.*)  They also argue that they expressly reserved the right to amend their contentions.

**C.  Given the fact that Plaintiffs expressly reserved the right to amend, but did not do so in a timely manner, the Court grants the motion to substitute infringement contentions, but requires Plaintiffs to bear the costs of the discovery needed**

Given that Plaintiffs did reserve the right to substitute the two claims, the Court grants their motion to amend infringement contentions.  But because Plaintiffs did not timely seek the substitution, the Court finds that Plaintiffs should bear the costs of the additional discovery the substitution will require.

The Court therefore orders:

- Plaintiffs are to make the required deponents available for Defendant to redepose;

- the subject matter of the depositions is limited to the substituted claims, i.e., the new contentions/claims that the motion permits;

- Depositions are not to exceed three hours for each deponent;

- Depositions are to be conducted by July 15, 2014; and

- Plaintiffs are to bear the costs of the additional discovery.  Defendant's attorneys' fees are not to exceed $1500.00 per deponent.  Plaintiffs are to

28

make the deponents available either at Defendant's choice of location or Plaintiffs are to pay the travel costs for Defendant's counsel to redepose the deponents; those travel costs are not to exceed the amounts that Defendant's counsel charged previously to travel to the deponents. Plaintiffs must also pay for any other costs that the additional discovery requires, e.g. court reporting fees; conference room fees, etc.

At the hearing, given the Court's granting of the motion to amend the infringement contentions, Defendant requested the ability to amend their invalidity reports. The Court granted that request. Defendant is to amend their invalidity report by August 15, 2014.

## VIII. The Court grants Plaintiffs' motion to compel because the information sought is relevant to a damages calculation

Plaintiffs have filed a motion to compel information that they argue is necessary to compute damages in this case. (Dkt. 40, Pls.' Mot. to Compel.) Plaintiffs state that Defendant "has produced revenue and cost information for the RamBox option, but has refused to produce such information for the accused pickup trucks themselves." (*Id.* at 2.) Plaintiffs argue that the revenue and cost information for the entire truck has a "direct bearing" on damages.[5] (*Id.*) Plaintiffs request that the Court order the production of the

---

[5]Plaintiffs seek the following information:

Topic 16: Financial information associated with the sale of the Accused Products, including but not limited to total revenues (gross and net), costs and expenses, and profits, per Model Year, for the Accused Products (specifically the pickup trucks as a whole–NOT just revenues and profits for the RamBox storage or the RamBox Cargo Maintenance System). In addition, total revenues (gross and net) and profits, per Model year, for the RamBox and for the RamBox Cargo Maintenance System.

Topic 17: Chrysler's financial information relating specifically to the profitability of the Accused Products, the profitability of the RamBox option, and the extent to which the RamBox option helps drive sales of the Accused Products.

Topic 21: Costs and revenues associated with sales of the Accused Products.

information as well as order that, after a reasonable time to review the materials, the Court order Defendant to reproduce its 30(b)(6) witness for "the limited purpose of eliciting testimony relating [] to the [] materials." (*Id.* at 3.)

Plaintiffs state that they have requested documents relating to gross and net revenues and profit margins for Dodge Ram trucks that are equipped with the RamBox for model year 2009 to the present. (Pl.'s Mot. to Compel at 3, Ex. 2.)

Defendant has refused to produce the revenue information that Plaintiffs sought, asserting that the information was not relevant. (Pls.' Mot. to Compel, Ex. 3.)

Plaintiffs responded to Defendant's email, asserting their position. (Pls.' Mot. to Compel, Ex. 4.) Plaintiffs stated that the requested information was relevant because they have asserted claims that are directed to a "pickup truck" or a "vehicle" and not simply a storage compartment or a storage system. (*Id.*) Plaintiffs stated that, "[a]t a minimum, this information is necessary to fully analyze [] Factor #6, which related to convoyed sales." (*Id.*) Plaintiffs also stated that the information related to Dodge pickup trucks is relevant given that the comparing RamBox trucks to non-RamBox trucks might reveal relevant information relating to RamBox pricing. (*Id.*)

Defendant continued to object and not produce the requested information through email and during Plaintiffs' examination of Defendant's damages witness. (Pls.' Mot. to Compel, Exs. 5, 7, 8, 9.)

The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad. *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 402 (6th Cir. 1998). Parties may obtain

---

(Pls.' Mot. to Compel, Ex. 6.)

discovery on any matter that is not privileged and is relevant to any party's claim or defense if it is reasonably calculated to lead to the discovery of admissible evidence.  Fed.R.Civ.P. 26(b)(1).  "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed.R.Evid. 401.  But the scope of discovery is not unlimited.  "District courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce."  *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007).

In patent cases, "[u]pon finding for the claimant the court should award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court."  35 U.S.C. § 284.  In assessing damages, a court is to ask: "Had the infringer not infringed, what would the patent holder have made?"  *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009) (citations omitted, altered). "Two alternative categories of infringement compensation are the patentee's lost profits and the reasonable royalty he would have received through arms-length bargaining."  *Id.* (citation omitted).

Defendant argues that, in cases where an invention is part of a larger product, as the storage box here is part of a truck, then the damages should only be calculated by how much profit is made on the smaller invention.  *See LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012) ("Where small elements of multi-component products are accused of infringement, calculating a royalty on the entire product

31

carries a considerable risk that the patentee will be improperly compensated for non-infringing components of that product." "Thus, it is generally required that royalties be based not on the entire product, but instead on the 'smallest salable patent-practicing unit.'"). That rule is the general rule. An exception, though, does exist. "The entire market value rule is a narrow exception to this general rule. If it can be shown that the patented feature drives the demand for an entire multi-component product, a patentee may be awarded damages as a percentage of revenues or profits attributable to the entire product." *LaserDynamics*, 694 F.3d at 67 (citation omitted). "In other words, '[t]he entire market value rule allows for the recovery of damages based on the value of an entire apparatus containing several features, when the feature patented constitutes the basis for customer demand.'" *Id.* (citations omitted, insertion in *LaserDynamics*.).

Defendant is right, if Plaintiffs were to succeed in this case, Plaintiffs should not be able to recover more than the reasonable royalty rate without a sufficient showing that the storage box drove sales of the trucks themselves. *See LaserDynamics*, 694 F.3d at 67-68 ("[I]n any case involving multi-component products, patentees may not calculate damages based on sales of the entire product, as opposed to the smallest salable patent-practicing unit, without showing that the demand for the entire product is attributable to the patented feature."). The Court recognizes the risks of requiring Defendant to disclose profits of the trucks. *Id.* at 68 ("Regardless of the chosen royalty rate, one way in which the error of an improperly admitted entire market value rate manifests itself is in the disclosure of the revenues earned by the accused infringer associated with a complete product rather than

32

the patented component only."). But the Court is confident, upon a more appropriately timed motion in limine, that it can sort out the proper damages method.[6]

The Court finds that Plaintiffs' requested information is relevant, it could lead to admissible evidence.  The Court therefore orders Defendant to produce the requested information by July 15, 2014.  Defendant must also make available a knowledgeable 30(b)(6) witness for Plaintiffs to depose, the deposition is to take by August 15, 2014.

## IX.  Conclusion

For the above-stated reasons, the Court OVERRULES Plaintiffs and Defendants' objections to the Special Master's report and recommendation, ACCEPTS and ADOPTS the report and recommendation in full, GRANTS Plaintiffs' motion to amend, and GRANTS Plaintiffs' motion to compel.

So ordered.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  June 4, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 4, 2014, by electronic and/or ordinary mail.

s/Carol J. Bethel
Case Manager

---

[6]At the hearing, Defendant requested that the Court make clear, given that the Court was inclined to grant the discovery motion, that Defendant could still object to the admissibility of the evidence produced because of this motion.  The Court therefore does so: Defendant retains every right to object to the admissibility of evidence in an appropriate motion in limine.

33