UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Scott Clare, Neil Long, and Innovative
Truck Storage, Inc.,

Case No. 13-11225

       Plaintiffs,

Honorable Nancy G. Edmunds

v.

Chrysler Group LLC,

       Defendant.

                                      /

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [88]**

Plaintiffs Scott Clare, Neil Long, and Innovative Truck Storage, Inc., have filed this patent infringement case against Defendant Chrysler Group, LLC, arguing that Defendant infringed their patents for hidden storage in the side of a pickup truck. Plaintiffs argue that Defendant has infringed Plaintiffs' patents with its Dodge Ram pickup's RamBox Cargo Management System ("RamBox"), which also contains storage in the side of a pickup truck. This matter comes before the Court on Defendant's motion for summary judgment of non-infringement and invalidity. For the reasons stated below, Defendant's motion is GRANTED.

**IV.**    **Background**

    **A. The Patents-In-Suit**

Plaintiffs accuse Defendant of infringing two patents: U.S. Patent Nos. 6,499,795 (the '795 patent) and 7,104,583 (the '583 patent). The '795 patent was issued on December 31, 2002. (Pls.' Resp., Ex. 1.) The '583 patent was issued on September 12, 2006. (*Id.*, Ex. 2.)

Both patents are titled "Vehicle with Storage/Utility System," and the disclosures of both patents are largely the same.

The patents are directed toward a storage box for a pickup truck that is built into the side panels in the truck's bed. The patents seek to address the problems of the conventional methods of pickup truck storage, namely tool boxes extending across the bed of the truck and utility beds. These methods are attractive to theft because they are bulky and visible. Plaintiffs' patents provide for storage built into the side panels of the pickup truck in a way that, unlike the traditional methods, the modification to the bed is not readily apparent, and the storage is hidden from view. Nevertheless, the modification to the bed does have some visible indications—visible cuts are made into the side panels of the truck so that the panels can be lifted through the use of a hinge to provide access to the storage. (*See* Figures 1 and 3.)



FIG. 1        FIG. 3

**B. The RamBox Cargo Management System**

The RamBox also provides for storage built into the side panels of a pickup truck. It includes several other features as well. According to Defendant, "The RamBox is an optional truck bed that replaces the conventional bed. The RamBox System includes several features: two lighted, drainable storage bins, a combination bed extender and cargo bed divider, and a bed rail tie down system." (Def.'s Mot. at 6.) The storage aspect of the RamBox is at issue in this case.



**C. Claim Construction**

On June 4, 2014, the Court accepted and adopted the Special Master's report and recommendation on the construction of three terms or phrases found in the patents. The first was the term "hinged panel," found in both the '795 and '583 patents. The Court adopted the Special Master's recommendation that "hinged panel" not be given any construction because it is a common phrase that should be given its ordinary and customary meaning. *Clare v. Chrysler Grp., LLC*, No. 13-11225, 2014 WL 2514563, at *9 (E.D. Mich. June 4, 2014).

The next two phrases were given the same construction by the Special Master. The Court will refer to these as the "external appearance limitations." The first is found in the

'795 patent: "the hinged portion is constructed such that the pickup truck has an external appearance of a conventional pickup truck free of storage box." This limitation is found in dependent claims 7, 13, 21, and 28 of the patent. Dependent claim 46 contains a similarly worded limitation. The second version of the phrase is found in the '583 patent: "the bed being constructed such that the pickup has substantially the external appearance of a pickup without the built-in storage." This limitation is found in independent claims 1, 22, 59, and 61 of the patent. Independent claim 45 contains a nearly identical limitation. Although these two phrases are slightly different, the Court adopted the Special Master's recommendation that they be given the same construction. The Special Master construed these phrases as "the hinged portion is constructed such that the storage box is not obvious from the outward appearance of the pickup." (Def.'s Mot., Ex. 6 at 14.)

In recommending this construction, the Special Master noted that both patents consistently referred to "the present invention as providing concealed storage intended to frustrate would-be thieves." (*Id.* ¶ 31; *see also id.* ¶ 43.) And in adopting the Special Master's recommendation, the Court stated that the Special Master's construction of the external appearance limitation

> captures the patent[s'] substance and purpose. The Court again needs only look to the claims and the specification to determine that the invention's purpose and a great part of its essence is devoted to deterring theft by cloaking the storage box in the appearance of a truck without a storage box—a storage box that is "not obvious."

*Clare*, 2014 WL 2514563, at *11. The Court further stated that the "invention's purpose is to hide the storage box from casual notice to deter theft. The 'not obvious' language captures that purpose." *Id.*

**IV. Standard of Review**

Summary judgment is proper when the movant "shows that there is no genuine dispute as to any material fact, and that the movant is entitled to judgment as a matter of law." *U.S. SEC v. Sierra Brokerage Services, Inc.*, 712 F.3d 321, 326-27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)) (quotations omitted). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* Furthermore, the "substantive law will identify which facts are material, and summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

When considering the material facts on the record, a court must bear in mind that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Moreover, "[i]n order to survive a motion for summary judgment, the non-moving party must be able to show 'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy." *Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008) (citing and quoting *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)).

**IV. Analysis**

Plaintiffs allege that Defendant's RamBox infringes claims 15, 19-21, 34, 37, 45, and 46 of the '795 patent and claims 33, 34, 37, 41, 43, 44, 46-48, 53, 56, and 57 of the '583 patent. Defendant makes two arguments in favor of summary judgment. The first concerns

the claims of the '795 and '583 patents containing the external appearance limitation. These are claims 21 and 46 of the '795 patent and claims 33, 34, 37, 41, 43, 44, 46-48, 53, 56, and 57 of the '583 patent. Defendant argues that the RamBox does not infringe these claims because the hinged portion of the RamBox has been constructed such that the storage box is obvious from the outward appearance of the truck. Defendant also argues that prosecution history estoppel bars Plaintiffs from alleging infringement under the doctrine of equivalents. Even if it does not, Defendant argues that allowing obvious storage to infringe these claims under the doctrine of equivalents would vitiate the external appearance limitation's requirement of "not obvious" storage.

The second argument concerns the claims that do not contain the external appearance limitation. These are claims 15, 19, 20, 34, 37, and 45 of the '795 patent. Defendant argues that these claims are invalid because they violate the written description requirement, 35 U.S.C. § 345(a), and because they are anticipated by prior art. 35 U.S.C. § 102.

Defendant also requests partial summary judgment that an invention, the Gobart Sto-Side, was both conceived of before Plaintiffs' invention and discloses all of the elements of claims 15, 19-21, 34, 37, 45, and 46 of the '795 patent.

### A. Defendant is Entitled to Summary Judgment of Non-Infringement On All Claims that Include the External Appearance Limitation

"To prove infringement, the patentee must show that an accused product embodies all limitations of the claim either literally or by the doctrine of equivalents." *Cephalon, Inc. v. Watson Pharmaceutical, Inc.*, 707 F.3d 1330, 1340 (Fed. Cir. 2013). "If any claim limitation is absent from the accused device, there is no literal infringement as a matter of

law." *Id.* "To find infringement under the doctrine of equivalents any differences between the claimed invention and the accused product must be insubstantial." *Brilliant Instruments, Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1346 (Fed. Cir. 2013). This is typically done by showing "for each claim limitation, that the accused product performs 'substantially the same function in substantially the same way with substantially the same result as each claim limitation of the patented product.'" *Id.* at 1347 (quoting *Crown Packaging Tech., Inc. v. Rexan Beverage Can Co.*, 559F.3d 1312 (Fed. Cir. 2009)). Infringement, either literal or under the doctrine of equivalents, is a question of fact. *Epos Technologies Ltd. v. Pegasus Technologies Ltd.*, 766 F.3d 1338, 1342 (Fed. Cir. 2014).

### 1. Literal Infringement

The RamBox does not literally infringe any claim containing the external appearance limitation. The hinged portion of the RamBox has been constructed such that the storage box is obvious from the outward appearance of the pickup. Many of the physical characteristics of the RamBox are readily apparent from the outward appearance of the truck. The metallic lock of the RamBox is plainly visible. It is positioned in an open portion at the center of the RamBox storage lid and the metallic color of the lock contrasts with the surrounding color of the pickup's side panel. The seams created between the storage lid and the side panel are also visible. They are located in an outward-facing area above waist height. Finally, the top rail of the RamBox is stamped "RAMBOX" in large lettering.

Plaintiffs' expert, Dr. Akin, and Plaintiffs themselves acknowledged the visibility of these characteristics. Dr. Akin testified multiple times that the hinged panel is visible, (Pls.' Resp., Ex. 12 at 56:10-12; 64:9-11, 17-18; 67:4-5; 71:17-18; 105:20-21), and apparent to a casual observer. (*Id.* at 106:10-11; 107:16-19; 113:3-5, 13-14; 134:11-12.) He also

testified that the lock is apparent (*Id.* at 129:7-9; 130:7-10), that it is apparent that the bed has been modified, (*Id.* at 132:18-19), and that the cut lines are apparent. (*Id.* at 175:23-176:1.) Plaintiff Clare also testified that the storage and hinged panel are obvious because of the cutlines and the pushbutton lock. (Def.'s Mot., Ex. 4 at 181:13-182:8, 184:8-15.) Plaintiff Long gave similar testimony. (*Id.*, Ex. 11 at 286:16-289-25.)

Plaintiffs argue that these visible distinctions do not foreclose a finding of literal infringement. They argue that the visible distinctions of the RamBox only show that its hinged panel is obvious. According to Plaintiffs, the focus of the external appearance limitation is on the obviousness of the storage box, not the hinged panel. In other words, the fact that the hinged panel providing access to the storage box is obvious does not necessarily mean that the storage box itself is obvious. Plaintiffs argue that the RamBox's storage box cannot be obvious because when the hinged panel is closed, the storage box is not visible at all. The internal characteristics of the storage box—size, shape, depth, etc.—also cannot be known simply by observing the truck's outward appearance. Plaintiffs bolster this argument with evidence that Defendant designed the RamBox to be visually integrated into the bed of the pickup. (Pls.' Resp., Ex. 8 at 13-19.).

Plaintiffs' argument misinterprets the language of the claim. Under Plaintiffs' view, the obviousness of the hinged panel is irrelevant to the obviousness of the storage box. Even if the hinged panel were painted florescent orange on a white pickup or stamped with large black letters saying RAMBOX STORAGE, (*See id.*, Ex. 12 at 182:1-183:8), the storage box would still not be obvious because it could not be seen from an outward appearance of the pickup. Based on the claim language, this cannot be the case. The claim focuses on "external appearance" of the pickup and the construction of the hinged panel. There must

be some way in which the hinged panel itself can make the storage boxes obvious from the external appearance of the pickup, and at a certain point, some level of visible distinctions of the hinged panel must result in the storage box being obvious. If it were otherwise, the language of the claim directing the inquiry toward the "external appearance" of the truck would not make sense.

For this reason, Defendant is entitled to summary judgment. Because of the numerous and obvious visible distinctions of the hinged panel, no reasonable juror could find that the hinged portion of the RamBox is constructed such that the storage box is not obvious from the outward appearance of the pickup. The visible distinctions of the hinged panel are all readily apparent. Plaintiffs themselves testified to this. Their argument that these distinctions do not render the storage box obvious because its interior cannot be seen when the hinged panel is closed is unavailing.

### 2. Doctrine of Equivalents

Plaintiffs also cannot prove infringement under the doctrine of equivalents. Plaintiffs argue that even if the hinged portion of the RamBox has been constructed such that the storage box is obvious from the outward appearance of the pickup (*i.e.*, there is no literal infringement), there can still be infringement under the doctrine of equivalents because an obvious storage box is an insubstantial difference from a storage box that is not obvious. Defendant raises two arguments against the use of the doctrine of equivalents: prosecution history estoppel and vitiation. These are addressed below.

#### a. Prosecution History Estoppel

Defendant first argues that Plaintiffs cannot prove infringement under the doctrine of equivalents because they are barred from doing so by prosecution history estoppel.

Prosecution history estoppel prevents the patentee from asserting an equivalent that was surrendered during the prosecution of the patent. *Festo*, 535 U.S. at 734. "Prosecution history estoppel can occur as a result of (i) amendments made to overcome patentability rejections or (ii) arguments made during prosecution that show a 'clear and unmistakable surrender of subject matter.'" *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1251 (Fed. Cir. 2000). Whether a patentee surrendered an equivalent through prosecution history estoppel is a question of law. *Id.* at 1251.

Amendment-based estoppel "arises when an amendment is made to secure the patent and the amendment narrows the patent's scope. *Festo*, 535 U.S. at 736. Any narrowing amendment "made to satisfy a requirement of the Patent Act may give rise to estoppel." *Id.* In making this determination, the court must determine why the patentee amended the claim during patent prosecution and what subject matter was surrendered by the amendment. *Id.* at 738. Nevertheless, there is a presumption that prosecution history estoppel applies when a patentee has filed an amendment seeking to narrow the scope of a claim, and "the reason for that amendment was a substantial one relating to patentability." *EMD Millipore Corp. v. AllPure Technologies, Inc.*, 768 F.3d 1196, 1203 (Fed. Cir. 2014) (citation omitted).

Argument-based estoppel arises when a patentee makes arguments during prosecution that show a "clear and unmistakable surrender of subject matter." *Bayer AG*, 212 F.3d at 1252. This is an objective determination made in view of the prosecution history as a whole. *Id.* The question is whether "whether a competitor would reasonably believe that the applicant had surrendered the relevant subject matter." *Id.* (quoting *Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448, 1457 (Fed. Cir. 1998)).

Defendant argues that both amendment-based estoppel and argument-based estoppel bar Plaintiffs from making a claim of infringement of the external appearance limitation under the doctrine of equivalents.

### (1) Amendment-Based Estoppel

To support its argument that amendment-based estoppel applies, Defendant points to amendments Plaintiffs made following the patent examiner's first rejection of the '583 patent. Defendant argues that after the patent examiner rejected the '583 patent, Plaintiffs amended the claims to include the external appearance limitation. This amendment led the examiner to allow the claims.

This is not what occurred during the prosecution of the '583 patent. It is true that the patent examiner rejected the '583 patent. (Pls.' Resp., Ex. 4 at A1352-58.) At this time, however, the external appearance limitation was already a part of the claims. Plaintiffs had added the external appearance limitation to the claims in the second preliminary amendment prior to the patent examiner's rejection. (*Id.* at A1342-50.) Although Plaintiffs amended the patent following the rejection, they did not amend the language of the external appearance limitation. (*Id.* at A1381-98.) The amendment following the rejection does not give rise to prosecution history estoppel.

The second preliminary amendment adding the external appearance limitation to the claims also does not give rise to prosecution history estoppel. Prior to that amendment, the language of the external appearance limitation was "wherein the hinged panel is constructed such that the pickup truck has an external appearance of a conventional pickup truck free of a storage box, hinges, key locks, or handles." (*Id.* at A1290-92.) The second preliminary amendment changed this language to "wherein the side panels have the

11

external appearance of a conventional pick truck without a storage compartment." (*Id.* at A1343-44, A1349.) Although the claims were amended, the amendment does not narrow their scope. It appears to broaden the scope by not expressly requiring that the external appearance be free of hinges, key locks, or handles. This amendment does not give rise to amendment-based estoppel.

### (2) Argument-Based Estoppel

Defendant, however, has shown that argument-based estoppel does apply. At the second Office Action, the patent examiner rejected the claims containing the external appearance limitation under 35 U.S.C. § 103(a) in view of a patent to Henri. (Pls.' Resp., Ex. 4 at A1547.) On appeal, Plaintiffs argued that the rejection over Henri should be overturned because the patent examiner ignored many of the differences between the '583 patent and Henri. (*Id.* at A1570-73.) One of these differences was that the '583 patent included claims requiring that the pickup have "substantially the external appearance of a pickup without the built-in storage." (*Id.* at A1571.) Plaintiffs argued that Henri describes "nothing more than a tool box that is designed to be bolted into the floor of pickup bed," (*Id.*), and that it "in no way suggests the inventive storage containers of the present claims that are constructed or built into the pickup bed and side panels in such a way that they are integrated into the original truck design." (*Id.*) Plaintiffs also argued that Henri does not "describe any attempt to visually integrate the storage compartments so the presence of the storage compartment does not affect the appearance of the truck." (*Id.* at A1573.)

In response to these arguments, the patent examiner allowed the claims containing the external appearance limitation. (*Id.* at A1596.) The patent examiner stated that the "rejection in view of Henri is no longer maintained in view of applicant's remarks for the

record regarding 'the pickup has substantially the external appearance of a pickup without the built-in storage' and in view of the rain drip strip 30a of Henri which protrudes above the top portion 26a of the side wall of the bed, precluding meeting the above claimed limitation regarding external appearance." (*Id.*)

Plaintiffs' arguments concerning the external appearance limitation show a clear and unmistakable surrender of a pickup containing an obvious storage box. This is the difference that Plaintiffs emphasized distinguished the '583 patent from Henri, and the reason why the '583 patent was valid despite Henri. *See Texas Instruments Inc. v. U.S. Int'l Trade Comm'n*, 988 F.2d 1165, 1174-75 (Fed. Cir. 1993)("By expressly stating that claim 12 was patentable because of the opposite-side gating limitation, particularly in light of their previous admission that same-side gating was known in the art, the inventors unmistakably excluded the same-side gating as an equivalent."). A reasonable competitor would conclude from Plaintiffs' statements in their appeal that Plaintiffs surrendered obvious storage boxes. *See Pharmacia & Upjohn Co. v. Mylan Pharm., Inc.*, 170 F.3d 1373, 1376-78 (Fed. Cir. 1999) (applying argument-based estoppel when the patentee emphasized the importance of claim limitation in distinguishing its patent from prior art during patent prosecution).

### (3) Vitiation

Even if prosecution history estoppel did not apply, Plaintiffs would still be unable to prove infringement through the doctrine of equivalents because the alleged equivalent would "vitiate" the external appearance limitation. "'Vitiation' is not an exception to the doctrine of equivalents, but instead is a legal determination that the evidence is such that no reasonable jury could determine the two elements to be equivalent." *Deere & Co. v.*

13

*Bush Hog, LLC*, 703 F.3d 1349, 1356 (Fed. Cir. 2012). A finding of vitiation is most appropriate "where the accused device contain[s] the antithesis of the claimed structure." *Planet Bingo, LLC v. GameTech Int'l, Inc.*, 472 F.3d 1338, 1345 (Fed. Cir. 2006). In assessing infringement under the doctrine of equivalents, however, "court[s] should be cautious not to shortcut the inquiry by identifying a 'binary choice' in which an element is either present or not present." *Deere*, 703 F.3d at 1356. Because the doctrine of equivalents already recognizes that the accused product does not literally infringe, "the vitiation test cannot be satisfied merely by noting that the equivalent substitute is outside the claimed limitation's literal scope." *Brilliant Instruments, Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1347 (Fed. Cir. 2013).

The Federal Circuit has recognized that a finding of equivalence "will be more difficult when the accused structure has an element that is opposite of the claimed element, especially where the specification of prosecution history highlights the differences." *Id.* And multiple cases hold that where the alleged equivalent is the "antithesis" of the claim limitation or where "two alternatives exist that are very different from each other," *Id.*, there can be no finding of infringement under the doctrine of equivalents. *See, e.g.*, *Planet Boingo*, 472 F.3d at 1345 ("This court has refused to apply the doctrine in other cases where the accused device contained the antithesis of the claimed structure."); *Cooper Cameron Corp. v. Kvaerner Oilfield Products, Inc.*, 291 F.3d 1317, 1321-22 (Fed.Cir. 2002) (holding that no reasonable juror could find that a port placed above two plugs could be insubstantially different from a port placed in between the two plugs); *Scimed Life Sys. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1347 (Fed. Cir. 2001)("If a patent states that the claimed device must be "non-metallic," the patentee cannot assert the patent

14

against a metallic device on the ground that a metallic device is equivalent to a non-metallic device."); *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1106 (Fed. Cir. 2000) ("It would defy logic to conclude that a minority—the very antithesis of a majority—could be insubstantially different from a claim limitation requiring a majority, and no reasonable juror could find otherwise.").

This is a case where the alleged equivalent is the antitheses of the claim limitation. The external appearance limitation requires that the hinged portion be constructed such that the storage box is not obvious from the outward appearance of the pickup. A hinged portion constructed such that the storage box *is obvious* is the antithesis of a hinged panel that is constructed such that the storage box is *not obvious.* Because of this, no reasonable jury could find that an obvious storage box is an insubstantial difference from a storage box that is not obvious or that an obvious storage box performs substantially the same function in substantially the same way to achieve substantially the same result as a storage box that is not obvious. *See Planet Boingo*, 472 F.3d at 1345.

### B. Claims 15, 19-20, 34, 27, and 45 of the '795 Patent Violate the Written Description Requirement and are Invalid

Claims 15, 19-20, 34, 37 and 45 of the '795 patent have no external appearance limitation. Defendant argues that these claims are invalid for violating the written description requirement. 35. U.S.C. § 112(a). Patents are presumed valid. 35 U.S.C. § 282(a). And each claim of a patent is presumed valid independently of the validity of other claims. *Id.* The party challenging the validity of the patent must prove such invalidity by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2242 (2011). On summary judgment this requires the party to "submit such clear and convincing evidence

15

of invalidity such that no reasonable jury could find otherwise." *Eli Lilly & Co. v. Barr Labs.*, Inc., 251 F.3d 955, 962 (Fed. Cir. 2001).

Under 35 U.S.C. § 112, ¶ 1, a patent specification must contain a "written description of the invention." To satisfy this requirement, the description must "clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed." *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc) (internal citations and quotations omitted). This determination requires "an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art." *Id.* Compliance with the written description requirement is a question of fact. *Scriptpro, LLC v. Innovation Associates, Inc.*, 762 F.3d 1355, 1359 (Fed. Cir. 2014). Summary judgment is proper, however, where no reasonable fact finder could return a verdict for the non-moving party. *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1307 (Fed. Cir. 2008).

Defendant argues that claims 15, 19-20, 34, 37, and 45 of the '795 patent are invalid for violating the written description requirement because they do not contain an external appearance limitation. According to Defendant, the specification of the '795 patent limits Plaintiffs' invention to hidden storage in the bed of a pickup. These claims, however, are not limited to hidden storage. Because they lack an external appearance limitation, they allow for plainly visible and obvious storage. A person of ordinary skill in the art, therefore, would not recognize from the specification that Plaintiffs invented non-hidden storage.

In support of this argument, Defendant relies on *ICU Medical, Inc. v. Alaris Medical Systems, Inc.*, 558 F.3d 1368 (Fed. Cir. 2009). In *ICU Medical*, the Federal Circuit affirmed a ruling of summary judgment of invalidity for violation of the written description

16

requirement where the invalid claims lacked a limitation that was required by the patent specification. The patent was directed toward medical valves containing an internal spike, and the patent specification only described medical valves containing an internal spike. *Id.* at 1378. The claims, however, contained no limitation requiring a spike. *Id.* Despite the fact that the claims did not expressly "exclude the preferred embodiment of a valve with spikes," *Id.*, the court held that these "spikeless" claims violated the written description requirement because they "do not include a spike limitation—i.e., they do not require a spike." *Id.* When the patent specification was limited to medical valves with spikes, the inventors could not claim medical valves without spikes. *Id.*

A similar result was reached in *Gentry Gallery, Inc., v. Berkline Corp.*, 134 F.3d 1473 (Fed. Cir. 1998). In *Gentry Gallery*, the patent was directed toward a unit of a sectional sofa where two independent recliners faced the same direction. *Id.* at 1474. In between the recliners was a center console that contained the recliners' controls. *Id.* at 1475. The court found that the patent specification "clearly identified the console as the only possible location for the controls" such that the placement of the controls in the center console was "an essential element of the invention." *Id.* at 1479. The claims at issue did not require that the controls be placed in the center console. The court held that the claims violated the written description requirement because the "disclosure is limited to sofas in which the recliner control is located on the console." *Id.* The court recognized that "a claim may be broader than the specific embodiment disclosed in the specification," but emphasized that "an applicant is entitled to claims only as broad as the prior art *and his disclosure* will allow." *Id.* at 1480 (internal quotations and citation omitted.)

17

Defendant is correct that the '795 patent is limited to hidden storage. Looking to the patent specification, this Court previously stated that "the invention's purpose and a great part of its essence is devoted to deterring theft by cloaking the storage box in the appearance of a truck without a storage box." *Clare*, 2014 WL 2514563, at *11. This conclusion was bolstered by numerous statements in the specification. Among these statements are:

> Thus the pickup can be used for pleasure or work without the appearance of its storage/utility capability . . . ('795 patent, col. 1, lns. 49-51.)
>
> By providing a hidden storage/utility system for a pickup truck bed . . . (*Id.*, col. 2, lns. 19-21.)
>
> The present invention involves a storage/utility system for a pickup truck bed and a method for conversion of a conventional pickup truck to a storage/utility bed without altering the appearance of the bed . . . . The present invention reduces the theft potential from storage/utility beds by eliminating the appearance of such beds. (*Id.*, cols. 3-4, lns. 65-6.)
>
> By the present invention, a conventional pickup truck bed is converted to a storage/utility bed . . . . Upon completion of the conversion, from a side view, the only difference between the converted bed and a nonconverted bed are the two vertical lines or small spaces . . . where the side panel is cut . . . . Thus one would not readily recognize the modification to the bed, and therefore those with intent to steal tools, etc. would not recognize the hidden storage arrangement. (*Id.*, col. 4, lns. 23-51.)
>
> It has thus been shown that the present invention provides a hidden storage/utility arrangement . . . without altering the external appearance of the bed. (*Id.*, col. 5, lns. 26-31.)

Based on these statements, and others, in the specification, a person of ordinary skill in the art would not recognize that Plaintiffs invented anything other than hidden storage in the bed of a pickup. Similar to *Gentry Gallery*, the '795 patent indicates that the hidden nature of the storage is "an essential element of the invention." 134 F.3d at 1479. Because the '795 patent only discloses hidden storage, any claim not containing such a limitation

18

violates the written description requirement. *Id.* at 1480. This is true even though the claims do not expressly exclude non-hidden storage. *See ICU Medical*, 558 F.3d at 1377. Here, claims 15, 19-20, 34, 37, and 45 of the '795 patent do not contain any limitation on the external appearance of the storage; they allow for obvious storage. These claims, therefore, violate the written description requirement.

Plaintiffs argue that the claims do not violate the written description requirement because the specification contemplates visible distinctions such as hinges, latches, and locks. It is not limited to storage that is completely concealed. This may be true. Nevertheless, even in allowing some visible distinctions, the patent discloses only storage that is hidden. The patent refers to the invention as "a hidden/storage utility arrangement, ('795 patent, Col. 5, ln. 26), and a "hidden storage utility system." (*Id.*, Col. 2, ln. 20.) It also states that the patent does not "alter the external appearance of the bed," (*Id.*, Col. 2, lns. 7-8), and that "those with intent to steal tools, etc. would not recognize the hidden storage arrangement." (*Id.*, Col. 4, lns. 51-52.) Visible distinctions may be allowed, but the distinctions must not render the storage obvious. Under the claims as written, there is no limit to the visibility of the storage. Because claims 15, 19-20, 34, 37, and 45 of the '795 patent do not contain any limitation on their external appearance, they violate the written description requirement and are invalid.[1]

## IV. Conclusion

---

[1] Because the Court finds that claims 15, 19-20, 34, 37, and 45 of the '795 are invalid for violating the written description requirement, the Court declines to address Defendant's argument that these claims are also invalid because they are anticipated by prior art. The Court also declines to address Defendant's argument for partial summary judgment based on the Gobart Sto-Side.

For the foregoing reasons, Defendant's motion is GRANTED.

SO ORDERED.

        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: December 4, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 4, 2014, by electronic and/or ordinary mail.

        s/Carol J. Bethel
        Case Manager